BARHAM *v.* IVY.

5-2287                                                     342 S. W. 2d 293

Opinion delivered January 23, 1961.

*Marcus Evrard,* for appellant.

*Gardner & Steinsiek,* for appellee.

PAUL WARD, Associate Justice. This litigation involves a somewhat typical dispute over a dividing line between adjoining properties. Unfortunately, in this instance, the dispute is between two eminent and well known attorneys who have been on friendly relations for many years. Beulah S. Barham brought suit to enjoin Bruce Ivy from encroaching upon her property. The issue was resolved in favor of Ivy by the Chancellor, and this appeal follows.

To properly understand the issue a brief statement of the factual background leading up to the litigation will be helpful. About the year 1920 appellant purchased a strip of land 30 feet wide from east to west off of the east side of Lot No. 3 in Block 20, Osceola Townsite Addition to Osceola. Soon thereafter she erected an office building on said strip of land which has been occupied by her husband, A. F. Barham, as a practicing attorney up until this time. A few years later Massey & Sullenger acquired title to Lot 2 in said addition. Lot 2 lies immediately east of and adjoins said Lot 3. About the year 1926 Massey & Sullenger erected an office building on Lot 2, and this property was conveyed to appellee about the year 1944.

It is the contention of Mr. Barham (representing his wife, the appellant) that the west wall of the Ivy building extends over on Lot 3 a distance of two feet and eight inches. It is the contention of appellee that his property line runs midway between his building and appellant's building. This contention would place the dividing line approximately three or four feet west of the west line of his building.

Appellant sought to establish the dividing line by the testimony of a surveyor, and appellee sought to establish his line by adverse possession and by showing the location of a fence acquiesced in for many years by appellant.

The Chancellor held in favor of appellee, in accordance with his contentions, and fixed the dividing line midway between the two buildings. In doing so the Chancellor announced that he was disregarding the testimony given by Mr. Barham and Mr. Ivy. The Chancellor had a right, we think, to conclude that the testimony of one off-sets the testimony of the other and perhaps this is what he had in mind, but he had no right to disregard their testimony entirely. However, we have concluded that the Chancellor reached the right result although on somewhat different grounds from those relied on to support our conclusions hereafter set out.

The testimony in this case is voluminous and much of it is in direct conflict. Under the view which we have taken it is unnecessary to set out in full this testimony or to comment on it extensively.

The Chancellor held, and we agree, that appellant failed to meet the burden of showing the location of the dividing line by the surveyor's testimony. The Chancellor found, and we again agree, that no definite beginning point for the survey was properly established. The testimony on the part of appellee tending to show adverse possession and to show the establishment of the fence (running equi-distance between the two buildings) was voluminous and not entirely satisfactory, and it was pointedly denied by a large number of appellant's witnesses. The Chancellor, who saw and heard the witnesses, found that their testimony established appellee's claim. It is most difficult for us to say that the Chancellor was right or that he was wrong, but there are some other undisputed facts and circumstances not mentioned by the Chancellor, which we think, support the conclusions he reached. Those facts and circumstances are hereafter set out.

It is conceded that the width of appellant's lot was 30 feet wide from east to west. In regard to the size and location of this building Mr. Barham testified:

"Q. What is the width of your building, if you know?

A. Well, it is twenty—I have measured it but I can't recall now. Twenty some odd feet.

Q. Do you have any recollection now when you built your building as to how much you would have on each side of your building, in regard to your lot?

A. Well, I intended, of course, to get the building in there on that lot so I would have some space on each side of it.

Q. Well, would it be a fair statement to say your intention was to have more or less an equal space on each side of the building?

A. Well, something like that."

Mr. O. W. Gauss, a long time resident of Osceola and a civil engineer with 50 years experience, testified in behalf of appellant regarding the width of appellant's building and the distance between the two buildings in question, after stating that he made a careful measure:

"Q. Now, what is the measurement?

A. I measured twenty-one feet six and one-half inches across Mr. Barham's building, and the area is seven feet between the Ivy Building west wall and Barham Building east wall.

Q. An even seven feet?

A. Could be off one-sixteenth."

The undisputed evidence shows that there is a concrete sidewalk along the west side of appellant's building.

The above established facts strongly indicate that the dividing line could not have been more than four or five feet east of her building, depending on the width of the sidewalk referred to above. Or, approached from another viewpoint, we find this situation: Appellant

here contends that the dividing line is nine feet and eight inches east of her building. This distance added to the width of her building amounts to thirty-one feet and two inches, while she concedes her lot to be only thirty feet wide. Mr. Barham admitted that he did not know the location of the true dividing line and, based on Mr. Ivy's contentions herein, it is apparent that he didn't know either.

The Chancellor, who had the opportunity to see and observe the witnesses, concluded from the conflicting testimony that the dividing line is located equi-distance between the two buildings, and it is our conclusion that the facts above related strongly support the Chancellor's conclusion. The decree of the trial court is therefore affirmed.